SEA GULL, The (WILLIAMS v.). See Case No. 17,736.

## Case No. 12,579.

### The SEA LARK.

[1 Spr. 571.] [1]

District Court, D. Massachusetts. May, 1860.

MARITIME LIENS—SUPPLIES—CREDIT OF OWNER—LACHES.

1. When a ship, at the Chincha Islands, was in want of a chain and anchor, and they were furnished by another vessel, and the credit of the

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

owner of the ship. at the place of his residence, was not good at the time the chain and anchor were purchased, and had not been good for two years previous. and there were no persons resident at the islands, whose business it was to lend money, or furnish supplies. to any owners: *held*, that it sufficiently appeared that those supplies could not have been obtained upon the personal credit of the owner, and that a lien therefor attached upon the vessel.

[Cited in The James Guy, Case No. 7,195; The Lulu, 10 Wall. (77 U. S.) 203.]

2. A lien would arise, without an express agreement therefor.

3. There is nothing in the case of Pratt v. Reed [19 How. (60 U. S.) 359], to disturb the old doctrine, that a tacit lien arises when the circumstances necessary to create it exist.

[Cited in The A. R. Dunlap, Case No. 513.]

4. The chain and anchor were furnished at the Chincha Islands. in September, 1857, the libel was not filed until September, 1859: *Held*, that the lien had not been lost by this delay, it appearing that the ship had not been within the United States, and that there was no reasonable opportunity to enforce the lien, before the suit was commenced.

This was a libel in admiralty, by the owners of the ship Jabez Snow, to recover the value of a chain and anchor, furnished to the ship Sea Lark, in September, 1857, at the Chincha Islands. Both vessels were of Boston, and met at the Chincha Islands. The Sea Lark, before her arrival there, had lost a chain and anchor, by a collision with another vessel, and the master of the Jabez Snow furnished the chain and anchor sued for, from his own vessel, to supply the place of those that· had been lost. In June, 1858, the owner of the Sea Lark gave the libellants his note for the amount, (about $900,) and took from them a receipt for the note. containing the statement, that, when paid, it was to be in full settlement of the claim for the chain and anchor. The claimant of the Sea Lark held her under a mortgage made before the chain and anchor were furnished, and a purchase of the right of redemption after they were furnished, and after he had notice of it. The libel was filed, and the ship arrested, in September, 1859, but she had not before been in the United States, since the articles were furnished. The answer alleged that the chain and anchor were furnished on the credit of the owner only, and not on that of the ship; that they were not necessary for the ship, and if they were, there was no necessity that her credit should be pledged to procure them, and there was, therefore, no lien upon the ship for the payment; and finally, if there ever was a lien upon the ship, it had been lost by the neglect of the libellants to collect the debt, of the owner of the ship. It appeared in evidence. that the master of the Sea Lark was authorized to draw upon his charterer, to a limited amount, but that this amount was not sufficient to meet his ordinary disbursements; that he drew upon the owner in Boston twice, while at the islands, and readily sold the drafts at a premium; one of them at Callao. a place about one hundred miles from the islands, and the other

to the master of a vessel, temporarily at the islands. It also appeared, that when the articles were purchased, there was nothing said, as to whether or not the sale was to be on the credit of the ship; and there was evidence, tending to show that the credit of the owner of the ship, at the time of the sale, was not good in Boston, where he resided.

John C. Dodge, for libellants.
F. C. Loring, for claimant.

SPRAGUE, District Judge. Two questions are raised in this case. First, was the ship Sea Lark ever subjected to a lien for the chain and anchor; and second, if she was, has the lien been lost. It is admitted, that as the law was understood, prior to the case of Pratt v. Reed, 19 How. [60 U. S.] 359, the sale of these articles, under the circumstances, would have created a lien upon the ship. By the law, as laid down in that case, it is incumbent on the libellants, in order to sustain their action, to prove, not only that the articles furnished were necessary for the ship, but also that they could not have been procured upon the credit of the owner. It appears that there are no mercantile houses established at the islands. whose business it is to furnish either supplies or money. One draft, drawn by the master of the Sea Lark, was sold to a master of a ship, temporarily at the islands, and another at Callao, but it does not appear that credit was given, or the drafts taken, without a lien upon the ship. If the credit of the owner was known at the islands or Callao, as it in fact existed in Boston, it seems clear the purchase could not have been made upon it. Two years before, he had failed to pay a large debt that became due from him, and it remained unpaid. until he went into insolvency. He testified that he got credit after these articles were furnished, but it appears that it was only for premiums of insurance.

The master of the Sea Lark stated, in his deposition, in the first instance, that he bought the articles on the credit of the owners. He does not say exclusively upon their credit; and if that was what he meant, it must have been an inference only, for he subsequently says. there was nothing said. one way or the other. as to whether the ship would be liable for the payment. It is not necessary that the ship should be, in terms. made liable for the payment. There is nothing in the recent case, to disturb the old doctrine, that a tacit lien arises. when the circumstances necessary to create it exist.

It appearing that the credit of the owner, at the place of his residence. was not good, at the time the chain and anchor were purchased. and had not been for two years prior to that time. and that there were no mercantile houses. or persons resident at the Chincha Islands. whose business or practice it was to lend money, or furnish supplies to any owners. I think it is sufficiently proved, that these necessary supplies could not have been obtained upon

the personal credit of the owner, and that a lien therefor attached upon the vessel.

There is no good ground for holding the lien to be lost. There has been no neglect in enforcing it against the ship. This process was commenced against her as soon as was reasonably practicable, after the articles were furnished. It is said there has been neglect to enforce the payment of the debt from the owner. It is not necessary to decide what would be the effect of such neglect, as none has been proved. Every effort to enforce the payment, except commencing a suit, seems to have been made. And, moreover, the claimant does not stand in the position of a bona fide purchaser, without notice. Judgment for the libellants.